# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made on April 8, 2015, between: Best Loading Service, Inc. (hereinafter referred to as "Defendant") and the class of Plaintiffs who have opted into this action and who are represented by Manuel Lopez in the case that is currently pending against Defendant in the United States District Court for the Western District of Tennessee.

## I.   PURPOSE

1.1   This Agreement is made as a compromise and final settlement of disputed claims brought by Plaintiffs for alleged violations by Defendant of the Fair Labor Standards Act ("FLSA"), for the time period from May 1, 2011, respectively: through the date of complete execution of this Settlement Agreement and Release for Representative Plaintiff.

## II.   DEFINITIONS

2.1   "Case" shall mean the case that is Civil Action No. 2:14-cv-02053 in the United States District Court for the Western District of Tennessee.

2.2   "Court" shall mean the United States District Court for the Western District of Tennessee.

2.3   "Representative Plaintiff" shall mean Manuel Lopez.

2.4   "Opt-In Plaintiffs" shall mean the class of Plaintiffs who have opted in to this action and who are represented by Manuel Lopez in the case that is currently pending against Defendant in the United States District Court for the Western District of Tennessee, with the exception of Representative Plaintiff.

2.5   "Plaintiffs" shall mean every plaintiff who has opted into the case by filing a written consent form, including but not limited to the Representative Plaintiff, but excluding those opt-in plaintiffs that have previously been dismissed and/or have withdrawn their consents.

2.6 "Defendant" shall mean Best Loading Service, Inc., its parents, subsidiaries, affiliates, and all of their respective or former agents, employees, officers, directors, members, owners, partners, shareholders, consultants, attorneys, successors, and insurers (collectively the "Released Parties").

2.7 "Parties" shall mean Plaintiffs, as defined in paragraph 2.5 herein, and Defendant, as defined in paragraph 2.6 herein.

2.8 "Agreed Order of Dismissal with Prejudice" shall mean the Order, filed jointly by Plaintiffs' Counsel and Defendant's Counsel in the Case, seeking dismissal of the Case with prejudice. A copy of an unexecuted Agreed Order of Dismissal with Prejudice is attached hereto as Attachment A.

2.9 "Class" and "Class Member Plaintiffs," shall mean those persons who filed consents in the case and have not been dismissed.

2.10 "Relevant Time or Relevant Time Period" shall mean from May 1, 2011, respectively: through the date of complete execution of this Settlement Agreement and Release for Representative Plaintiff.

2.11 "Administrator" means an entity engaged by Defendant to handle disbursement of settlement funds in this matter, or Defendant, if Defendant elects to administer the settlement itself.

2.12 "Wage Settlement Check" means a check representing the *pro rata* share of the back wage recovery in this matter due to each Plaintiff that will be delivered to each Plaintiff in exchange for a Release of claims.

2.13 "Incentive Payment" means an additional payment, treated as compensatory damages, which shall be paid to the Representative Plaintiff in acknowledgement of his roles as Representative Plaintiff in this matter, and accordant risks he incurred.

### III.     SETTLEMENT OF DISPUTES

3.1     This case was brought as a collective action under the FLSA. Plaintiffs allege Defendant violated applicable wage and hour law by failing to properly pay overtime and/or by not compensating employees for all hours worked. The case seeks, among other relief, overtime pay, liquidated and other damages, attorneys' fees, and equitable relief.

3.2     Defendant denies that it/they violated applicable wage and hour law or any other law, requirement, or common-law principles or otherwise treated Plaintiffs or any other individuals improperly regarding the payment of wages or compensation for time worked.

3.3     The Parties engaged in a mediation of this matter on November 18, 2014 and again on April 8, 2015.  The mediation on November 18, 2014, which took place at the offices of Blair Mediation Group in Memphis, Tennessee, was conducted by Allen Blair, lasted over eight (8) hours and entailed arm's-length bargaining among the Parties and their counsel. The mediation on April 8, 2015 took place at the offices of Fisher & Phillips, LLP and Plaintiff's counsel participated via telephone. This mediation lasted over nine (9) hours and entailed arm's-length bargaining among the Parties and their counsel. The Parties had exchanged thousands of relevant documents pertaining to wages and hours of Plaintiffs prior to the mediations.

3.4     The Parties desire to reach a full and final compromise and settlement of the Case and all claims that Defendant violated the provisions of the FLSA with respect to Plaintiffs. The Parties acknowledge and agree that this Lawsuit involves bona fide disputed issues of law and fact including, but not limited to, whether Plaintiffs' wait time was compensable under the FLSA and whether Plaintiffs were properly paid overtime and/or compensated for all hours worked. All such issues were discussed at length during the course of the mediation in this matter.  The Parties acknowledge and agree that given these bona fide disputes as to the issues of law and fact, this Agreement is the result of negotiation and compromise by the Parties as to the disputed

3

issues and is a fair and reasonable settlement of Plaintiffs' claims. The parties acknowledge that settlement of the Case is dependent upon and subject to the conditions for final settlement as outlined herein.

### IV.   COURT APPROVAL

4.1   The Parties agree that settlement of this Case is contingent upon the Court's approving the terms of settlement and entering the Agreed Order of Dismissal with Prejudice. The Parties agree to jointly submit this Agreement to the Court for review, along with a joint request for approval of the settlement and dismissal of the Lawsuit.  In the event the Court requires the Parties to submit legal briefing and/or attend a hearing to obtain approval as to the reasonableness or fairness of the terms of settlement, the Parties agree to cooperate with respect to apprising the Court regarding the history of the case and terms of settlement.

### V.   FINANCIAL TERMS OF SETTLEMENT

5.1   In accordance with the provision below, Defendant shall pay to Opt-in Plaintiffs, Representative Plaintiff, and Plaintiffs' Counsel, Morgan & Morgan, in the form of a common fund, a total sum not to exceed ███████████████████████ in full and complete settlement of any and all claims, fees, costs, and expenses that the Plaintiffs or their Counsel have or may have against Defendant as a result of the allegations or claims as set forth in the Case. The funds shall be allocated and distributed as follows:

(a)   Manuel Lopez will be paid ███████████████ in acknowledgement of his role as Representative Plaintiff for his efforts on behalf of the Class Member Plaintiffs. This payment is not for wages; instead, it is an Incentive Payment to compensate Mr. Lopez for prosecuting this case on behalf of other similarly situated employees.  Mr. Lopez shall receive an IRS Form 1099 solely for this amount.  This amount is in addition to any amount Mr. Lopez

4

would receive in his Wage Settlement Check as a participant in the Class settlement fund as provided below. Defendant shall deliver this Incentive Payment to Mr. Lopez within thirty (30) business days after the date of issuance of a Court Order dismissing this case with prejudice.

(b) A total of ████████████████████████████████████████ ████████████████████████ shall be paid to Morgan & Morgan, representing its attorneys' fees ████████, costs ████████ and other expenses for bringing this lawsuit, including the claims asserted under the Fair Labor Standards Act. Payment of this sum will be made within thirty (30) business days after the date of issuance of a Court Order dismissing this case with prejudice. Morgan & Morgan will receive a separate IRS Form 1099 solely reflecting payment of this attorneys' fee and expense amount.

(c) The amount each Plaintiff will receive will be computed for each week the respective Plaintiff was employed during the class period using a formula that takes into account the following variables:

Actual hours recorded;
Gross Pay;
Such Plaintiff's regular rate of pay for that week;
The appropriate overtime rate; and
The number of overtime hours estimated worked off-the-clock, in addition to any documented overtime hours.

The weekly amounts will be totaled to provide the amount the Plaintiff will receive, as a proportion of the common fund, net of attorneys' fees and costs, and the incentive payment to be made to Manual Lopez, as referenced in Paragraph 5.1(a).

5

(d)     Each Plaintiff's allocation from the common fund, made pursuant to the formula referenced in Paragraph 5.1(c), shall be divided such that: (1) one half of each Plaintiff's allocation shall be deemed of back wages owed, subject to the applicable payroll taxes, and (2) the other half of each Plaintiff's allocation shall be deemed to be disputed liquidated damages owed, for which each Plaintiff will receive a separate IRS Form 1099 solely reflecting payment of these disputed liquidated damages.

(e)     Plaintiffs shall be responsible for calculating the gross amounts before withholdings due to each Plaintiff, pursuant to the formula set forth in Paragraph 5.1(c) above, based on wage information provided by Defendant, and for presenting this information to the Administrator to enable administration of the settlement in this matter. Plaintiffs agree that the wage information required to calculate the amount due to each Plaintiff has been provided by Defendant prior to the execution of this Agreement or will be provided hereafter.

(f)     The amounts set forth in Paragraph 5.1(c)-(d) shall be distributed to Plaintiffs in the form of Wage Settlement Checks, pursuant to the settlement administration process describe in Section VI of this Agreement.

5.2     The amount for attorneys' fees, costs, and expenses as set forth in Paragraph 5.1(b) is in full and complete settlement of all claims for attorneys' fees, costs, and expenses to be paid by Defendant to Plaintiffs and Plaintiffs' Counsel. Defendant and Plaintiffs agree that Defendant will pay the mediator's fee relating to the mediation on April 8, 2015, and that Defendant will be solely responsible of taxes typically born by an employer, that arise from the payments referenced in paragraph 5.1(c).

## VI.   SETTLEMENT ADMINISTRATION

6.1	Subject to the exceptions expressly described herein, Defendant will be responsible for administering the settlement of this matter, including paying for costs attendant thereto.  Defendant may choose to administer the settlement itself or, in its sole discretion, may engage a third-party administrator to administer the settlement. Defendant shall be responsible for any fees charged by a third-party administrator. The Administrator will keep Plaintiffs' Counsel reasonably apprised of the progress and results of the settlement administration to ensure that Plaintiff's Counsel has adequate information to monitor and provide oversight to protect the Class's interests under this Agreement and the corresponding settlement.

6.2	Within thirty (30) business days of the receipt of calculation of amounts due to each Plaintiff, as set forth in Paragraph 5.1(c) herein, and contingent upon approval of this Agreement by the Court, the Administrator will prepare and mail to each Plaintiff who is to receive payment hereunder, or if applicable, to their lawful heir(s) or authorized legal representatives, a Wage Settlement Check in an amount as calculated in Paragraph 5.1(c) above, less applicable withholding. Upon request by the Administrator, Plaintiffs' Counsel will agree to a reasonable extension of the time for mailing these checks, not to exceed an additional ten (10) business days. These checks will be sent to the last known address of each Plaintiff as listed on each Plaintiff's Opt-in Consent Form filed with the Court, or as otherwise provided by Plaintiffs' counsel.  Prior to distribution, Defendant (or a third-party administrator) will run the list through the USPS' National Change of Address (NCOA) database to ascertain the best available current address for each of the Plaintiffs.

6.3	In addition to the Wage Settlement Checks, the Administrator will subsequently issue to each Plaintiff, or if applicable, their lawful heir(s) or authorized legal representatives, a corresponding W-2 Form for the Wage Settlement Check amount representative of the disputed back wages, and a corresponding 1099 Form for the Wage Settlement Check amount

representative of the disputed liquidated damages. All monies paid to each of the Plaintiffs will be deemed paid in the year that their respective check is issued.

      6.4     Any individual who opted into this case, or if applicable, his or her lawful heir(s) or authorized legal representatives, shall, by endorsing his or her Wage Settlement Check, execute a Release, which Release acknowledges that all claims under the FLSA are fully settled and that the Case shall be dismissed with prejudice. Such a Release must be executed as a condition to the receipt of any money by an individual Plaintiff. The Release will be affixed to the reverse side of every Wage Settlement Check issued to any Plaintiff in this case. A copy of such Release is attached hereto as Attachment B. Along with the Wage Settlement Check and affixed Release, the Administrator will also distribute to each Plaintiff a Notice of Settlement of Lawsuit and Release of Claims, a copy of which is attached hereto as Attachment C. The Administrator will direct any inquiries from Plaintiffs regarding the content of the settlement documents or the terms of settlement to Plaintiffs' Counsel.

      6.5     All Wage Settlement Checks shall be treated as wages and subject to withholding. The Administrator will be responsible for calculating the amount of withholding applicable to each Settlement Check.

      6.6     All Wage Settlement Checks shall expire 180 days from the date of the original issuance.

      6.7     If any Wage Settlement Checks mailed by the Administrator pursuant to Paragraph 6.2 are returned because of the inability to locate the proper individual or because of an incorrect address, the Administrator agrees to timely inform Plaintiffs' counsel, who will be responsible for taking reasonable additional steps to locate such individuals and for providing updated contact information to the Administrator. The Administrator will resend each Wage Settlement Check up to two (2) times based on updated information provided by Plaintiffs'

counsel, at the request of Plaintiffs' counsel. If a check is returned a third time, it will be forwarded to Plaintiffs' counsel who at that time shall assume sole responsibility (including paying for any associated costs) for delivery of the Wage Settlement Check. However, to the extent one or more of the Plaintiffs' checks are returned as undeliverable after two attempts, the Plaintiff(s) to whom such checks were issued will not be deemed to have waived their instant claims.

6.8     Based on the reasonable request of a Plaintiff or Plaintiffs' counsel, the Administrator shall void and reissue a Wage Settlement Check up to one (1) time for each Plaintiff during the course of administration of the settlement. In no event shall the Administrator be required to issue more than two (2) Wage Settlement Checks to any Plaintiff.

6.9     The Parties and the Administrator shall work together in a cooperative manner, pursuant to the terms of this Agreement, to make sure all settlement funds are disbursed to Plaintiffs in the manner set forth in this Agreement. In the event that any settlement funds remain unclaimed, the Parties agree that such funds shall revert back to Defendant. The Administrator will notify and receive authorization from Plaintiffs' counsel prior to distributing any unclaimed funds in this matter. Defendant shall have no responsibility for any claims to money by individuals who had their Wage Settlement Checks reverted back to Defendant.

## VII.     RELEASE

7.1     In consideration for the funds allocated and/or received pursuant to this Agreement and for the other promises by Defendant herein, Representative Plaintiff, on his own behalf, as well as for his collective heirs, assigns, trustees, guardians, receivers, administrators, executors, and agents, hereby settles, waives, releases and discharges all claims whatsoever against Defendant with respect to each and every claim, cause of action, right, liability or demand of any kind or nature known and unknown at this time that Representative Plaintiff may have or may

have had which arose at any time and which may arise at any time until this Agreement is duly executed.  Such claims that are hereby released include by way of example, but not limitation, all claims:

    a.    arising from Representative Plaintiff's employment with and separation from Defendant, including claims for any pay, wages, severance or severance pay, medical expenses, bonus, vacation, sick pay, notice pay, reimbursement of expenses, insurance, pay for unused benefits and all other terms and conditions of employment or employment practices;

    b.    based on discrimination, retaliation or harassment on the basis of age, race, religion, sex or disability under the Civil Rights Act of 1866, Title VII of the Civil Rights Act of 1964 (as amended), the Equal Pay Act, the Employee Retirement and Income Security Act of 1974 (as amended), the Americans with Disabilities Act of 1990, the Family and Medical Leave Act, or any other federal, state or local anti-discrimination laws or common laws relating to discrimination in employment or otherwise regulating the employment relationship, or affecting the health or safety of employees in the workplace;

    c.    based on any oral, written or implied contract, tort (such as negligent or intentional infliction of emotional distress, negligent retention or supervision, defamation, fraud, slander, invasion of privacy, etc.), promissory estoppel, public policy, retaliation, or wrongful discharge theory; and

    d.    relating to any attorney's fees, interest or costs (except as provided in Paragraph 5.1(b) above), including attorney's fees incurred in connection with any review of this Agreement by an attorney.

This Agreement does not release any right or claim of Representative Plaintiff which may arise after the date of this Agreement.

Representative Plaintiff further agrees not to sue or to authorize anyone else to file a lawsuit on his behalf against Defendant (or any of the other released parties) on any claims released herein.  Representative Plaintiff further agrees not to become a member of any class suing Defendant (or the other parties released) on any claims released herein.  Representative Plaintiff expressly acknowledges that this agreement does not relinquish any protected rights he may have under Title VII of the Civil Rights Act of 1964, the Equal Pay Act ("EPA"), the Americans with Disabilities Act ("ADA"), the Older Workers Benefit Protection Act ("OWBPA"), the Age Discrimination in Employment Act ("ADEA"), or the National Labor Relations Act ("NLRA") to file a charge, testify, assist or participate in any manner in an investigation, hearing or proceeding conducted by the Equal Employment Opportunity Commission, the Office of Federal Contract Compliance, or the National Labor Relations Board; however Representative Plaintiff agrees that he cannot recover additional compensation or damages as a result of that participation.

7.2    Further, Representative Plaintiff, on his own behalf, as well as for his collective heirs, assigns, trustees, guardians, receivers, administrators, executors, and agents, and on behalf of all Plaintiffs in this Case, hereby releases and forever discharges Defendant, its/their parents, subsidiaries,  affiliates, and all of their respective present or former agents, employees, officers, directors, members, owners, partners, shareholders, consultants, attorneys, successors, and insurers (collectively, "the Released Parties") from any and all legal responsibilities, claims, rights of action, causes of action, suits, liabilities, demands, and damages whatsoever he/they has/have or may purport to have against the released parties arising out of Plaintiffs' allegations that Defendant did not pay Plaintiffs properly for the time they worked, including but not limited

11

to such claims under the Fair Labor Standards Act, and any other law, statute, regulation, or common law doctrine upon which Plaintiffs might rely to recover damages for time worked. This Release shall apply to any and all such claims arising during the Relevant Time Period.

7.3    In addition to the release of claims set forth in Paragraphs 0 and 7.2 above, the Parties agree that a further release in the form set forth in Attachment C will be stamped on the back of each check distributed to each Plaintiff, or if applicable, their lawful heir(s) or authorized legal representatives, with such further individual release being executed upon endorsement of the check by each Plaintiff, or if applicable, their lawful heir(s) or authorized legal representatives.

7.4    Plaintiffs agree and acknowledge this Settlement Agreement does not constitute any admission of guilt, fault, responsibility, wrongdoing, discrimination, or liability on the part of Defendant or any of the Released Parties. Plaintiffs agree and acknowledge that Defendant denies all allegations of improper or unlawful conduct or liability based on any claims, disputes, charges, complaints, or lawsuits covered by this Agreement, including this Case.

7.5    Defendant acknowledges that federal and state laws prohibit retaliation against employees who participate in wage litigation, and Defendant fully intends to comply with all federal and state laws prohibiting retaliation.

7.6    Plaintiffs acknowledge that Defendant has not made any representations concerning the taxability of consideration paid pursuant to this Agreement.  Plaintiffs acknowledge that any and all tax consequences are solely the responsibility of Plaintiffs, with the exception of taxes normally born by an employer, and that Defendant will comply with its duty to report Plaintiffs' receipt of cash consideration to the Internal Revenue Service and to all other appropriate agencies or authorities.  Each party remains solely responsible for his, her or its own tax obligations, and nothing herein is intended to alter such obligations.

## VIII. DISMISSAL OF THE CASE

8.1     The Parties further agree that upon the execution of this Agreement, Counsel for Plaintiffs and Counsel for Defendant shall execute an Agreed Order of Dismissal with Prejudice in the form attached hereto as Attachment A, and that such Agreed Order of Dismissal with Prejudice will be submitted promptly for entry by the Court, following approval of the settlement, if any.

## IX. MISCELLANEOUS

9.1     As a condition precedent to the assertion by any party of any default or breach under this Agreement, such party shall give notice to the other reciting the nature of the claimed default or breach and the specific facts upon which the claim is based, and shall allow the other party fifteen (15) days from the receipt of such notice within which to cure such claimed default or breach. If any default shall occur and be continuing, the non-defaulting party may protect and enforce its rights under this Agreement as it deems appropriate, including proceedings for specific performance of any covenant or agreement contained herein, and the non-defaulting party may enforce the payment of any obligations due hereunder or enforce any other legal or equitable right contained herein. All rights, remedies, and powers conferred upon the parties in the Agreement shall he deemed cumulative and not exclusive of any other rights, remedies, or powers provided in this Agreement or that the parties otherwise may have at law or in equity.

9.2     If any provision of this Agreement shall be held invalid or unenforceable, the remainder of this Agreement shall nevertheless remain in full force and effect. If any provision is held invalid or unenforceable with respect to particular circumstances, it shall nevertheless remain in full force and effect in all other circumstances. Moreover, the Court may modify the offending provision to the minimum extent necessary to render it enforceable. No waiver of any term or condition of this Agreement or any part hereof on one occasion shall be deemed a waiver

of any other terms or conditions of this Agreement or any later breach of the same term or condition.

9.3    Should any questions arise as to the construction or interpretation of this Agreement, this Agreement shall be construed and interpreted according to the laws of the State of Tennessee.  Any action brought to enforce any terms of this Agreement shall be brought in a court of competent jurisdiction located in Shelby County, Tennessee.

9.4    This Agreement represents the full, integrated agreement of the Parties and can be modified or amended only by a writing signed by Representative Plaintiff, Plaintiffs' Counsel, Defendant, and Defendant's Counsel. This Agreement is the product of mutual drafting and negotiation between Plaintiffs' Counsel and Defendant's Counsel on behalf of the Parties. Accordingly, the rule of *contra proferentum* (construction against the drafter) shall not apply against either Party.

9.5    In the event any proceeding is brought to enforce the terms of this Agreement, the prevailing party shall recover against the other party its reasonable attorneys' fees and expenses incurred in connection with such action.

## X.    CERTIFICATION

10.1    The signatories hereto certify they are authorized to execute this Agreement on behalf of their respective parties. The parties understand the facts or law may be different than they presently understand or believe, they are signing this Agreement voluntarily, and they are not relying on any oral or other statements in signing this Agreement.

10.2    The Parties to this Agreement acknowledge it reflects their good-faith compromise of the claims raised in the Case based upon their respective assessments of the mutual risks and costs of further litigation.

10.3 By signing this Agreement, the Parties certify they have read and understand the Agreement, and they have had an opportunity to consult with their respective attorneys concerning the Agreement.

AGREED:

_____
REPRESENTATIVE PLAINTIFF, Manuel Lopez

Date: _____

Best Loading Service, Inc.

By:_____

Its:_____

Date:_____

APPROVED:

Morgan & Morgan
Plaintiffs' Counsel

By: _____

Date:_____

Fisher & Phillips LLP

By:_____

Date:_____

FPDOCS 30251991.2